## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

**LAURIE J. LEWIS**

   **-v-**                                                    **3:04CV1194(DJS)(TPS)**

**TOWN OF WATERFORD,**
**BRUCE MILLER and**
**PAUL B. ECCARD**

### RECOMMENDED RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This case involves plaintiff Laurie Lewis's claim that the defendants, Town of Waterford, Bruce Miller, and Paul Eccard, promoted her from Public Safety Dispatcher II/Training Coordinator to Communications Supervisor, and then refused to honor that promotion or to compensate her for performing additional responsibilities connected with the promotion, despite repeated requests by the plaintiff that they do so. Pursuant to Rule 56, the defendants filed a motion for summary judgment as to all of the claims presented by the plaintiff.

### I.   SUMMARY OF FACTS

The plaintiff has been employed by the Town of Waterford since 1988. She began as a Police Dispatcher. In 1992, the Waterford Fire Commission appointed her as a Public Safety Dispatcher, and then promoted her in 1993 to Public Safety

Dispatcher II/Training Coordinator. (Compl. ¶ 7.)  In 2001, Fire Marshal Dave Garside announced that he would be retiring in February of 2002, thus necessitating a reorganization of positions within the Fire Service. (Defs.' Mem. Supp. Mot. Summ. J. 4.)  Marshal Garside suggested that the Board of Fire Commissioners promote defendant Miller to the position of Fire Administrator and Peter Schlink to the position of Fire Marshal. Defendant Miller previously had been the Communications Supervisor, and Mr. Schlink had been the Deputy Fire Marshal. (Id.)  Defendant Miller expressed to the plaintiff that he hoped she would become the Communications Supervisor.  (Pl.'s Opp. Mot. Summ. J. 4.)

After defendant Miller and Mr. Schlink's positions became permanent and they received retroactive pay raises, defendant Miller informed the plaintiff that he was working with human resources to create a new job description for her. (Id.)  In the meantime, the plaintiff assumed the day-to-day supervision of the Communications Department.  (Id. at 6.)

When the plaintiff failed to receive any retroactive compensation, she complained to defendant Miller, the Fire Commission, and the Connecticut Department of Labor.  (Id. at 7, 10.)  In January of 2003, defendant Miller informed the plaintiff that he was no longer seeking to create a new Communications

-2-

Supervisor position.  (Id. at 8.)   The plaintiff questioned defendant Miller as to why she was no longer the Communications Supervisor and why she was not paid for the additional duties she assumed.  She also asked defendant Miller to inform her what her job title and duties were.  (Defs.' Mem. Supp. Mot. Summ. J. 9.) Defendant Miller informed the plaintiff that she had held the position of Dispatcher/Training Coordinator since July 1, 1994. (Id.)

The plaintiff filed the complaint in this action on July 19, 2004, alleging that the defendants (1) violated the Fair Labor standards Act of 1938, (2) violated Connecticut General Statutes § 52-564, (3) retaliated against her in violation of the First Amendment of the United States Constitution, (4) violated her equal protection and procedural and substantive due process rights under the 14th amendment of the United States Constitution, and (5) intentionally inflicted emotional distress. The defendants denied all of the plaintiff's claims and filed the Motion for Summary Judgment now before this Court.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs motions for summary judgment, and states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together

> with the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter
> of law.

Fed. R. Civ. P. 56(c).  The moving party bears the burden of

demonstrating the absence of any genuine issue of material fact,

and all ambiguities must be viewed in the light most favorable to

the nonmoving party.  Id.  "An issue of fact is 'genuine' where

'the evidence is such that a reasonable jury could return a

verdict for the nonmoving party.'" Giordano v. City of New York,

274 F.3d 740, 746 (2d Cir. 2001) (citing Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986)).  "A fact is 'material' if

it 'might affect the outcome of the suit under the governing

law.'" Id. at 746-47.

## III.  DISCUSSION

### A.  Violation of Fair Labor Standards Act, Theft of Services, and Deprivation of Substantive Due Process Claims

In her complaint, the plaintiff alleges that the defendants

violated the Fair Labor Standards Act of 1938 and committed theft

of her services in violation of Section 52-564 of the Connecticut

General Statutes by refusing to pay her the wages to which she

was entitled.  (Compl. ¶¶ 25, 26.)  The plaintiff also claims

that the defendants deprived her of substantive due process of

law in violation of the 14th Amendment of the United States

Constitution.  (Compl. ¶ 28.)  The defendants assert that the

-4-

plaintiff abandoned these three claims because she did not respond to defendants' arguments concerning the Fair Labor Standards Act, Connecticut General Statute § 52-564, or substantive due process. (Defs.' Reply Mem. Supp. Summ. J. 1.) The defendants ask the court to grant summary judgment on this basis. (Id.)

In Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), the court stated that "[f]ederal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." See also, Ostroski v. Town of Southold, No. 99CV2648, 2006 WL 2053761, at *10 (E.D.N.Y. July 21, 2006). In the present case, the defendants moved for summary judgment, but the plaintiff did not address the defendants' arguments concerning the Fair Labor Standards Act, theft of services, and substantive due process claims in her response to the motion for summary judgment. As a result of the plaintiff's failure to respond to the defendants' arguments, the court finds that the plaintiff abandoned the claims.

The court in Taylor also noted that summary judgment could be granted when the court found a claim to be abandoned. 269 F. Supp. 2d at 75, See, Ostroski, 2006 WL 2053761 at *10. Since the court finds that the plaintiff abandoned her violation of the

Fair Labor Standards Act of 1938, theft of services, and deprivation of substantive due process claims, the motion for summary judgment with respect to those claims is **GRANTED.**

## B.   First Amendment Retaliation Claim

The plaintiff claims that the defendants retaliated against her because (1) she complained that she had not been paid the increased wage owed to her as a result of her promotion to the position of Communications Supervisor and (2) she gave information to the FBI in connection with an investigation of bid-rigging in the Waterford Fire Department.  (Compl. ¶¶ 16, 19; Pl.'s Opp. Mot. Summ. J. 14.)   In order to sustain a First Amendment retaliation claim, the plaintiff must "demonstrate by a preponderance of the evidence that (1) [her] speech was constitutionally protected, (2) [she] suffered an adverse employment decision, and (3) a causal connection exists between [her] speech and the adverse employment determination against [her], so that it can be said that [her] speech was a motivating factor in the determination."  Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1999).

In determining whether the plaintiff's speech is constitutionally protected, "a court first must decide whether the speech addresses a matter of public concern."  Lewis v. Cowen, 165 F.3d 154, 161 (2d Cir. 1999) (citing United States v.

Nat'l Treasury Employees Union, 513 U.S. 454, 466 (1995)).
Whether the plaintiff's "speech addresses a matter of public
concern is a question of law for the court to decide, taking into
account the content, form, and context of a given statement as
revealed by the whole record."   Id. at 163 (citing Connick v.
Myers, 461 U.S. 138, 147-48 (1983)).   The court in Connick held:

> When a public employee speaks not as a citizen
> upon matters of public concern, but instead as an
> employee upon matters only of personal interest,
> absent the most unusual circumstances, a federal
> court is not the appropriate forum in which to
> review the wisdom of a personnel decision taken by
> a public agency allegedly in reaction to the
> employee's behavior.

461 U.S. at 147.   When determining whether the plaintiff's speech
is protected by the First Amendment, the court "should focus on
the motive of the speaker and attempt to determine whether the
speech was calculated to redress personal grievances or whether
it had a broader public purpose."   Lewis, 165 F.3d at 163-64
(citing Curtis v. Oklahoma City Pub. Sch. Bd. of Educ., 147 F.3d
1200, 1212 (10th Cir. 1998).

     In order to survive the motion for summary judgment, the
plaintiff's complaints to the defendants and to the Connecticut
Department of Labor concerning her wages must first qualify as a
matter of public concern.   In Urashka v. Griffin Hosp., 841 F.
Supp. 468, 474 (D. Conn. 1994) (citing Connick, 461 U.S. at 147),

the court stated that the "First Amendment does not protect speech on purely private matters, such as the terms and conditions of one's employment."  The plaintiff in Urashka raised concerns about the Hospital Administration's mismanagement and how she was overworked and subjected to inordinate amounts of stress. 841 F. Supp. at 474 n.7.  The court characterized this speech as precisely the type of personal employee grievance identified in Connick.  Id.  In other words, the plaintiff's speech concerned a private matter, and was therefore not protected by the First Amendment.  Id.

The court in Campbell v. Windham Cmty. Mem'l Hosp., Inc., 389 F. Supp. 2d 370 (D. Conn. 2005), further discussed the parameters of what constitutes a matter of public concern in the context of Connecticut General Statute § 31-51q.  § 31-51q concerns the liability of employers for disciplining or discharging employees on account of the employees' exercise of their rights under the First Amendment of the United States Constitution, as well as under the state constitution.  Conn. Gen. Stat. § 31-51q (2006).  Similar to the First Amendment, § 31-51q "'applies only to expressions regarding public concerns that are motivated by an employee's desire to speak out as a citizen.'"  Campbell, 389 F. Supp. 2d at 382 (quoting Cotto v.

United Tech. Corp., Sikorsky Aircraft Div., 251 Conn. 1, 17 (1999)).

In Campbell, the plaintiff's speech concerned pastoral care practices at the hospital for which she worked.  The plaintiff objected to the hospital's policy of providing patient lists to local clergy, distributing religious bibles and pamphlets to the patients despite the fact that the hospital was non-denominational, and offering office space to one religious group, but not others.  389 F. Supp. 2d at 375.  The court found that the plaintiff's speech constituted a matter of public concern, noting, "[i]t cannot be said that Campbell's speech concerned only 'the scope of the terms and conditions of her employment.'" 389 F. Supp. 2d at 382 (quoting Winik-Nystrup v. Mfrs. Life Ins. Co., 8 F. Supp. 2d 157, 160 (D. Conn. 1998)).  The court also stated that "[h]er speech did not relate to the terms of her employment or her own pay and salary." Id.  Since the court specified that the plaintiff's speech did not concern the terms and conditions of employment, such as salary and pay, and then found that her speech constituted a matter of public concern, it logically follows that the inverse is also true; i.e., that speech regarding such subjects does not qualify as speech involving a matter of public concern.

-9-

Here, like in <u>Urashka</u>, the plaintiff's complaints regarding her wages amounts to a personal grievance.  The plaintiff's motive was of personal, not public, interest.  She wished to be compensated at the level she believed appropriate for the additional responsibilities she undertook.  In addition, the plaintiff's wage is a term and condition of her employment which, according to <u>Urashka</u> and <u>Campbell</u>, is not a protected area of speech under the First Amendment.  Accordingly, the court finds that the plaintiff's speech did not constitute a matter of public concern, and is therefore not constitutionally protected.  Consequently, the plaintiff does not satisfy the first prong of the test enunciated in <u>Morris</u>, and therefore has not stated a First Amendment retaliation claim.

In regard to the alleged complaint to the FBI, the plaintiff denied reporting to or speaking with the FBI with respect to the Waterford Fire Department.  (Pl.'s Local Rule 56 Statement Ex. A ¶ 10.)  The plaintiff cannot claim that the First Amendment protects speech that she denies she made.  In addition, the court granted the motion to strike the statement concerning the complaint to the FBI as inadmissible hearsay.  Therefore, the court will not consider the statement for the purpose of the motion for summary judgment, and the Defendants' Motion for

Summary Judgment with respect to the First Amendment retaliation claim must be **GRANTED.**

## C.  Equal Protection Claim

The plaintiff does not indicate in her complaint that she is claiming a racial or gender equal protection violation.  Instead, she asserts that the defendants intentionally and maliciously treated her differently from other employees.  (Compl. ¶¶ 23, 24.) The defendants analyze this claim as a so-called "class of one" claim, and the plaintiff does the same.  (Defs.' Mot. Summ. J. 24; Pl.'s Mem. Opp. Mot. Summ. J. 20.)  As there is no dispute between the parties concerning the labeling of this claim, the Court treats it as a class of one claim as well.

In order to prevail in a class of one equal protection claim under the 14th amendment, the plaintiff must at least "allege[] that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Where, as here, "a plaintiff in a class of one equal protection case relies on similarity alone, a more stringent standard must be applied than is applied in a racial discrimination case."  Neilson v. D'Angelis, 409 F.3d 100, 106 (2d Cir. 2005).

The level of similarity between the plaintiff and the persons with whom she compares herself must be extremely high. Id. at 104. In fact, the plaintiff "must demonstrate that [she was] treated differently than someone who is prima facie identical in all relevant respects." Purze v. Village of Winthrop Harbor, 286 F.3d 452, 455 (7th Cir. 2002)). In addition, the plaintiff "must prove that the challenged governmental action is irrational or arbitrary. This inquiry does not turn on whether the action was correct, but focuses instead "'on whether the [government] official's conduct was rationally related to the accomplishment of the work of the agency.'" Fago v. City of Hartford, No. 302CV1189AH, 2006 WL 860126, at *7 (D. Conn. Mar. 31, 2006) (citing Bizzarro v. Miranda, 394 F.3d 82, 88-89 (2d Cir. 2005)).

The plaintiff here claims that the defendants intentionally and maliciously treated her differently from other employees of the Town without a rational basis, but did not name the co-workers from whom she was treated differently. (Pl.'s Compl. ¶¶ 23, 24.) In Fago, the court granted the defendant's motion for summary judgment because the plaintiff did not establish the required level of similarity between himself and the persons from whom he was treated differently. The plaintiff police officer maintained that he was singled out from other similarly-situated

-12-

Hartford Police Department ("HPD") officers when he was demoted from lieutenant to sergeant for arbitrary reasons.  2006 WL 860126, at *5.  The plaintiff neglected to identify any HPD officers who were identical to him, as required by Neilson.  In particular, he "failed to identify any other probationary lieutenant who was demoted after an investigation revealed a pattern of abusive and harassing behavior toward fellow officers."  Id. at *7.  In addition, the plaintiff did not introduce any evidence indicating that the defendants acted arbitrarily.  On the contrary, the record established that the defendants had a legitimate basis for investigating certain incidents and for the demotion.  Id. at *8.  The court found that the defendants were entitled to judgment as a matter of law because the plaintiff did not prove the two elements of an equal protection claim: that he was treated differently from others similarly situated and the defendant acted arbitrarily.

Similar to Fago, the plaintiff in the instant case does not identify any particular similarly situated co-workers in her complaint. In her Brief in Opposition to Summary Judgment, the plaintiff mentions specific individuals, but those individuals are not sufficiently similar to the plaintiff to state a class of one equal protection claim.  The plaintiff refers to a subordinate co-worker, Dispatcher Desciscido, who defendant

Miller took with him, rather than the plaintiff, to a conference. (Pl.'s Opp. Mot. Summ. J. 9.)   The plaintiff does not allege, however, that Desciscido was demoted after assuming additional responsibilities.  This Court, like the court in <u>Fago</u>, holds that the plaintiff must identify someone who held the same position and suffered the same adverse treatment as the plaintiff.  2006 WL 860126, at *7.  Desciscido does not bear the high level of similarity to the plaintiff required by a class of one claim.

The plaintiff also claims that defendant Miller and Peter Schlink received permanent placement in and retroactive pay for their promotions.  The plaintiff did not assert, however, that the two men did not qualify for the positions and new positions had to be created for them and then approved.  Again, the persons the plaintiff chooses as those similarly situated to her do not bear the high level of similarity, as noted by the court in <u>Fago</u>.  As such, the evidence offered by the plaintiff here is not sufficient enough to support a *prima facie* equal protection claim.  The plaintiff's claim fails the first prong of the test articulated in <u>Olech</u> and, therefore, the Defendant's Motion for Summary Judgment should be **GRANTED** with respect to the equal protection claim.

**D.   <u>Procedural Due Process Claim</u>**

In order to establish a procedural due process claim under the 14th amendment, the plaintiff must show that she (1) possessed a constitutionally protected interest, (2) that such interest was deprived by government action, and (3) that the deprivation occurred without adequate pre- or post-deprivation process. <u>Rivera v. City of New York</u>, 392 F. Supp. 2d. 644, 651 (S.D.N.Y. 2005) (citing <u>New York State Nat'l Org. for Women v. Pataki</u>, 261 F.3d 156, 163 (2d Cir. 2001)). The plaintiff in the instant case fails to establish the first element.

In essence, the plaintiff claims that she was effectively promoted to the position of Communications Supervisor because she assumed additional responsibilities. She claims that she "performed all the duties of Supervisor of Dispatch and/or Communications Supervisor." (Compl. ¶ 11). In her deposition, the plaintiff indicated that she handled the scheduling and payroll of the dispatchers, approved time off, and evaluated the dispatchers. (Defs.' Local Rule 56 Statement Ex. D 7-8.) Later in her deposition, the plaintiff admitted that defendant Miller created the master schedule, and she merely approved time off. (<u>Id.</u> at 9.) The plaintiff also alleges that she gave verbal counseling to other dispatchers, served on the Communications

-15-

Advisory Board, and was the Fire/Police Liaison and Emergency Management Communications Officer. (Pl.'s Opp. Mot. Summ. J. 5.)

Although the plaintiff claims that she was promoted to Communications Supervisor, and offers her added responsibilities as proof of that promotion, the record indicates that the plaintiff did not assume all of the duties of that position. For example, the Communications Supervisor position includes duties such as, *inter alia*, ensuring quality control, reviewing and approving computer assisted dispatch system database updates, managing the center's expenses, ensuring all contracts, policies, and procedures remained accurate, coordinating the center's response to emergencies, or serving as chairperson of the center's User's Committee. (Id.) The plaintiff did not allege that she assumed any of these responsibilities. Furthermore, the job description for the plaintiff's position, Public Safety Dispatcher II, notes that the individual "may supervise others in special situations when authorized" and perform "other related duties as assigned." (Defs.' Local Rule 56 Statement Ex. C.) The few additional duties the plaintiff assumed could reasonably fall under one of these two categories.

Furthermore, the defendants claim that defendant Miller continued to perform most of the duties of the Communications Supervisor after his promotion to Fire Administrator. The

defendants admit that defendant Miller relinquished the day-to-day supervision of the department to the plaintiff. (Defs.' Mem. Supp. Mot. Summ. J. 5.)  However, Defendant Miller continued to handle billing, monthly statistical reports, formal discipline, computer-aided dispatching, database programming updating, budget preparation, oversight of expenses, and the provision and maintenance of the equipment.  (Id., Defs.' Local Rule 56 Statement Ex. A ¶ 21.)  While the plaintiff assumed some of the duties of the Communications Supervisor, the evidence reveals that defendant Miller retained the majority of his duties as Communications Supervisor, even after his promotion.

The evidence presented demonstrates that although the plaintiff assumed a few additional responsibilities, she did not assume enough of them to qualify as the Communications Supervisor.  The court finds that the plaintiff was not effectively promoted to the position of Communications Supervisor.

Courts do not recognize a property interest in a promotion where only a promise to promote exists.  The court in Mallett v. Town of Plainville, No. 3:01CV1137, 2006 WL 931712, at *10 (D. Conn. April 4, 2006), stated that the "mere promise of a promotion by a supervisor is not sufficient to create a property interest in that promotion."  In the instant case, defendant

-17-

Miller approached the plaintiff in April of 2001 about the proposed restructuring of the chain of command when Fire Marshal Garside's retirement was finalized.  The defendant expressed his wish that the plaintiff assume the position of Communications Supervisor.  (Pl.'s Local Rule 56 Statement ¶ 21.)  The plaintiff, however, did not qualify for the Communications Supervisor position.  (Defs.' Local Rule 56 Statement Ex. D 3.) In April of the next year, defendant Miller informed the plaintiff that he was working with the human resources office to create a supervisory position for her.  (Pl.'s Local Rule 56 Statement ¶ 22.)

From the defendant's statements, the plaintiff reasonably expected that she would be promoted.  To prevail on a procedural due process claim in the employment context, however, the plaintiff "must establish that [s]he has a legitimate, constitutionally-based claim of entitlement to the position, not merely an unprotected, unilateral expectation of employment." Mallett, 2006 WL 931712 at *10.  Since a promise to promote is not sufficient to create a claim of entitlement, the plaintiff has failed to demonstrate that she had a protected property interest in her promotion to a supervisory position.  Therefore, the Motion for Summary Judgment must be **GRANTED** as to the procedural due process claim under the 14th Amendment.

**E.    Intentional Infliction of Emotional Distress Claim**

In order to establish a claim for intentional infliction of emotional distress, the plaintiff must demonstrate:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe.

Mallet, 2006 WL 931712, at *13 (Apr. 4, 2006) (quoting Petyan v. Ellis, 200 Conn. 243, 253 (1986)).

The plaintiff and defendants in the instant case focus on the second prong of the test in their motions regarding summary judgment.   Whether a defendant's conduct satisfies the requirement that it be extreme and outrageous is initially a question for the court.   Id. (citing Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552 (D. Conn. 1996)).   "Only where reasonable minds could disagree does it become an issue for the jury."   Id.  A defendant is liable for intentional infliction of emotional distress when his conduct "'is so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to

-19-

cause, and does cause, mental distress of a very serious kind.'" Id. (quoting Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 194 (D. Conn. 2000)).

The plaintiff claims that the January 27, 2003 meeting with defendant Miller was the primary cause of her emotional distress. (Pl.'s Local Rule 56 Statement Ex. A ¶ 19.)  In that meeting, the defendant told the plaintiff to "'turn in [her] phone, turn in [her] keys, [she was] going back on the rotation.'" (Defs.' Local Rule 56 Statement Ex. BB.)  The plaintiff interpreted the removal of her duties as an act of discipline.  (Id.)  The court in Perodeau v. City of Hartford, 259 Conn. 729, 757 (2002), however, noted that employees in an ongoing employment relationship "reasonably should expect to be subject to routine employment-related conduct, including . . . disciplinary or investigatory action arising from actual or alleged employee misconduct."

In the case before the Court, the defendant's disciplinary action occurred, according to the plaintiff, as a result of the plaintiff's mishandling of an insubordination issue.  (Defs.' Local Rule 56 Statement Ex. BB.)  The disciplinary action consisted of removing some of the plaintiff's duties.  Id.  The Court does not regard the removal of duties as so extreme and outrageous as to "go beyond all possible bounds of decency."

-20-

Thus, the disciplinary action does not constitute outrageous conduct sufficient to establish a claim for intentional infliction of emotional distress.

The defendant's conduct could also be viewed as a demotion of the plaintiff since the defendant took back some of the plaintiff's added responsibilities. The court in Perodeau, however, also included demotion in its list of employment-related conduct that an employee should reasonably expect. 259 Conn. at 757. In addition, in Jones v. H.N.S. Mgmt. Co., Inc., No. CV020471419S 2003 WL 22332837, at *3 (Sept. 25, 2003), the court found that "[a]lthough the defendants' demotion of the plaintiff was surely unpleasant and upsetting to her, it did not, as a matter of law, constitute extreme and outrageous behavior." In the instant case, the plaintiff was not actually promoted, but only given additional responsibilities, therefore the removal of her added responsibilities was even less than a demotion. Since courts do not find that demoting an employee is outrageous conduct, neither is removing additional responsibilities from the employee's duties.

The Court finds that the defendant's conduct as a matter of law was not sufficiently outrageous to meet the second prong of the test for intentional infliction of emotional distress. Therefore, the Defendants' Motion for Summary Judgment as to the

-21-

claim of intentional infliction of emotional distress should be **GRANTED**.

### IV.   CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be **GRANTED** on all counts.

**Dated at Hartford, Connecticut, this 17th day of August, 2006.**

**/s/ Thomas P. Smith**
**Thomas P. Smith**
**United States Magistrate Judge**
